

November 14, 2024

**Via Electronic Mail**

Duncan Brown
Daniel Riedl
Assistant United States Attorneys
Office of the U.S. Attorney, Northern District of Ohio
duncan.brown@usdoj.gov
daniel.riedl@usdoj.gov

      Re:    *United States v. Alla Witte*
               Case No. 1:20-CR-440 (Oliver, J.)

Dear AUSAs Brown and Riedl:

      As you know, Judge Oliver plans to hold a status conference in the above-referenced case to address the outstanding issue of restitution. To that end, we reviewed your November 1, 2024 letter and proposed Joint Statement on Amount Paid in Ransom ("Joint Statement").

      We have two principal disagreements with the Joint Statement. First, Ms. Witte cannot be held responsible for victims' losses that pre- or post-date her involvement in the conspiracy or losses that were not reasonably foreseeable. She played a minor and largely unknowing role in the conspiracy, and any restitution amount attributable to her must reflect her role and conduct. And second, even if Ms. Witte can be held accountable for the entirety of the victims' losses, the Government's own evidence and calculations reflected in the Joint Statement do not establish by a preponderance of the evidence the requested amount of $21,229,148.01.

    **I.**    **Ms. Witte's Conduct and Role in the Trickbot Conspiracy is Starkly Different from Mr. Dunaev's Role and Conduct.**

      First, your letter states the "calculations are based on the Court's direction in United States v. Vladimir Dunaev, 1:20CR440 . . .." As a threshold matter, Ms. Witte's case is distinguishable from Mr. Dunaev's because the two had vastly different roles and different actions in the conspiracy. Using the same methods to calculate restitution for both individuals is therefore inappropriate and fundamentally flawed.

CLEVELAND
One Cleveland Center
1375 East Ninth Street
Floor 30
Ohio 44114
216.367.2120

CHARLOTTE
COLUMBUS
DETROIT
PITTSBURGH

flannerygeorgalis.com

Mr. Dunaev joined the conspiracy in June 2016 and was arrested in June 2021; therefore, he was involved for approximately 60 months. The parties agreed that Ms. Witte, on the other hand, only learned the conspiracy was a criminal organization in approximately July 2019. (Plea Agreement, ECF No. 76, PageID 405.) She was arrested in early February 2021, putting her time in the conspiracy at approximately 19 months, at most. Thus, Mr. Dunaev's involvement was approximately 41 months—three and a half years—longer than Ms. Witte's.

Further, Ms. Witte was named in 19 counts of the Indictment, while Mr. Dunaev was named in all 47 counts. And while Ms. Witte ultimately pleaded guilty to just one count (Count 1, Conspiracy to Commit Computer Fraud and Aggravated Identity Theft, 18 U.S.C. § 371), Mr. Dunaev pleaded guilty to two counts: Count 1 **and** Count 2, Conspiracy to Commit Wire and Bank Fraud, 18 U.S.C. § 1349. As for punishment, Ms. Witte received a sentence of 32 months in prison, while Mr. Dunaev received a sentence of 64 months in prison—a sentence *twice* the length of Ms. Witte's.

Further, the Government cannot dispute that Mr. Dunaev played a bigger role than Ms. Witte in the Trickbot organization. Mr. Dunaev was a back-end developer: that is, he wrote the malicious code and worked on the operations of the malware. Mr. Dunaev "developed browser modifications . . . [that] facilitated and enhanced the remote access obtained by Trickbot by allowing actors to steal passwords, credentials, and other stored information" and "developed a program code which was used to conceal the Trickbot malware from being detected by legitimate security software." (Government's Sentencing Memorandum for Vladimir Dunaev, ECF No. 102, PageID 851.) Put simply, Mr. Dunaev developed sophisticated code that enabled Trickbot to remotely access victim information and to hide/disguise Trickbot's malware, allowing it to run undetected.

In stark contrast, Ms. Witte was a front-end developer, and her tasks related to visual elements and layouts (such as the "splash page" referenced on page 10 of the Government's Sentencing Memorandum). One Trickbot task required her to create a "control panel," or a glorified spreadsheet, that allowed Trickbot members to track certain information (in this case, infected computers). There is nothing inherently malicious about the control panel. And as opposed to Mr. Dunaev, Ms. Witte never developed sophisticated or malicious software code. In fact, she didn't know how to, and she struggled with even basic programming languages like PHP and Linux.

Again, Trickbot's main objective was to create malware and infect a victim's computer. Ms. Witte did none of that: she did not code the ransomware; she did not code the banking trojans; she did not code the injects; and she did not code the bots used to spread Trickbot from victim computer to victim computer. But Mr. Dunaev did. And the Indictment in this case supports Ms. Witte's limited role, as she was associated with just seven of the 1,040 overt acts identified in Count 1.

Finally, and most tellingly, even Trickbot's own criminal leadership expressed remorse over Ms. Witte's negligible involvement in the conspiracy. During communications between one of the Government's confidential sources and "Stern," one of Trickbot's top leaders, Stern made the following telling statements:

- "it's a pity they arrested alla …"
- "and she didn't even know she was doing something bad"
- "she had no idea what trickbot is"
- "we paid her … very little money"
- "I understand what a horrible man I am … ruined her life"

Ms. Witte is far less culpable than Mr. Dunaev. Relying on the same methods and calculations to support restitution for both defendants is legally improper, factually distinguishable, and fundamentally unfair.

Congress acknowledged that some cases involve facts so complex that restitution need not be awarded at all. Section 3663A of the Mandatory Victim's Restitution Act provides that mandatory restitution "shall not apply . . . if the court finds, from facts on the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). For example, one district court declined to order restitution when that court "would need to conduct extensive evidentiary proceedings in order to calculate the appropriate restitution amounts for each of the defendants." *United States v. Schlifstein*, No. 18-CR-217 (KMW), 2020 WL 2539123, at *1 (S.D.N.Y. May 19, 2020). Such is the case here, where determining true and accurate loss for each victim requires extensive and complex calculations and testimony. The complexity is further illustrated by the fact that the Court has been unable to rule on the issue of restitution in this matter for over a year.

## II. The Government Failed to Meet its Burden to Establish the Restitution Amount by a Preponderance of the Evidence.

The Mandatory Victim's Rights Act places the burden of proof on the Government to establish the amount of restitution (*i.e.*, loss by the victim) by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e); *see also United States v. DuMouchelle*, Case No. 20-20245, 2022 WL 2974918 (E.D. Mich. July 27, 2022). The Government thus must prove the amount of loss for each victim, with a victim for conspiracy cases being defined as "any person directly harmed by the defendant's criminal conduct in the course of the [] conspiracy." *See* 18 U.S.C. § 3663A(a)(2). However, the Government's Joint Statement fails to meet that burden in Ms. Witte's case for three reasons.

*First*, per the Plea Agreement, Ms. Witte's time in the conspiracy was limited: it started in July 2019 and lasted until her arrest on February 6, 2021. Properly focusing on that time period reflects a total loss amount of only $2,133,170.00, rather than the requested $21,229,148.01. **All** the victims in Table 1 predate Ms. Witte's role in the conspiracy. As to Table 2, Exhibits A through I, R through U, and W through Z predate Ms. Witte's role in the conspiracy, as we explained in greater detail in Ms. Witte's Brief in Opposition to the Award of Restitution.

In the Government's Supplementary Restitution Memorandum for Mr. Dunaev, it argues "the restitution in the amount of $46,962,096.93 is appropriate because it represents the losses realized by victims who were victimized by malware that was delivered by the Trickbot Group suite of malware **during the period of time when Defendant VLADIMIR DUNAEV was an active member of the Trickbot Group**." (ECF No. 108, PageID 1136.) (Emphasis added.) However, the Government inexplicably strays from this calculation when it comes to Ms. Witte's calculations because the vast majority of losses included in Tables 1 and 2 occurred during the period of time when Ms. Witte was **not** an active member of the Trickbot Group. Counting the loss amounts of victims who predated her role in the conspiracy (while not doing the same for her codefendant) is patently unjust.

*Second*, the loss claims for the victims within Ms. Witte's period in the conspiracy still fail because the Government has not met its evidentiary burden by showing, by a preponderance of the evidence, that those loss amounts are properly calculated or can even be attributed to Trickbot. We will not recreate the full tables here and instead direct the Government to Ms. Witte's Brief in Opposition. But to briefly summarize, many of the Government's Exhibits show the losses were attributable to another organization such as Ryuk, Conti, Qbot, Emotet, ICED, etc. Further, many of the Exhibits fail to provide support for the loss amount, and, in some cases, fail to show that a ransom was even paid at all.

Moreover, the Government has not proven by a preponderance of the evidence that the victims paid ransoms to crypto wallets or locations belonging to Trickbot. The Government did not present victims at the sentencing hearing or restitution hearing, nor did *any witness*, let alone an expert in the field, testify about the loss amount, much less testify about cryptocurrency or digital asset tracing (the only reliable method to show a victim's cryptocurrency payment went to the Trickbot organization). Further, the Government continues to conflate the Trickbot group with other ransomware conspiracies, most notably, Ryuk and Conti. The Government's own evidence illustrates the existence of multiple conspiracies. Various tables of Bitcoin transfers offered in discovery were labeled as "Conti Loss" and "Ryuk Loss." And of the 10 identified victims that paid ransoms during Ms. Witte's participation with Trickbot, the Government's own information shows that each of them was victimized by either the Conti or Ryuk ransomware groups. Not Trickbot. Despite being aware of these issues at the time of the restitution hearing, the Government made no adjustments reflecting these realities but rather *added* more victims to Table 2. Ultimately, instead of providing any witness testimony, affidavits, or expert reports from the victims or, for that matter, from the Government, the Government instead provided a convoluted 222-page PDF of unverified, unsubstantiated loss claims that include victims of at least six different ransomware organizations that may or may not have caused the losses during time periods when Ms. Witte was not even involved in the Trickbot Group.

In the Government's Supplementary Restitution Memorandum for Mr. Dunaev, it argues "the loss amounts provided are neither overly broad nor speculative" while simultaneously and irreconcilably arguing "because of the sources of loss provided supporting documentation, those statements should be accepted by the Court and serve as the basis for an order of restitution." (ECF No. 108, PageID 1136 and 1138.) The unverified statements from the victims in this case are far from enough to establish the complex loss by a preponderance of the evidence.

The current state of the law holds that the Confrontation Clause does not extend to sentencing hearings and procedures (including the restitution phase of sentencing), but these holdings emerged from a legal context markedly different from the realities of our current world. In the 1980s and 1990s, when the courts issued these holdings, the scale, nature, and speed of transnational and cyber-related crimes were virtually inconceivable. Today, we are confronted with malware and ransomware executed by hidden actors scattered across the globe. These actors digitally target local institutions instantaneously with a single click of the mouse, using intangible currencies and anonymous credentials. This rapid, borderless interaction challenges the foundational assumptions underlying the original Confrontation Clause analysis as applied to sentencing and restitution hearings.

While it remains true that defendants currently have no explicit constitutional right to confront accusers at sentencing, this historical legal framework was not shaped with today's realities in mind. Modern-day technology underscores the need for a more critical examination. At a minimum, the Court should demand a heightened evidentiary burden on the Government in cases such as these where the loss attribution and evidentiary support are murky at best. But even without a heightened standard, the current "preponderance of the evidence" standard must carry genuine weight; it should not simply be a rubber-stamped assumption. The victims in this case lack the expertise or understanding necessary to pinpoint the true sources of their losses. Indeed, they may be unable to identify the precise nature of the ransomware, let alone who executed it and is culpable for the losses. Therefore, the burden falls squarely on the Government to ensure that its evidence is both robust and rigorously tested before being used to influence sentencing and restitution outcomes.

*Finally*, the Government's own cryptocurrency tracing reflects that, of the ransom payments made by the victims[1] during Ms. Witte's conspiracy period, the "Trickbot Proceeds Wallet" only received $793,000.00. Continuing further down the chain, Ms. Witte received only $24,905.49.[2] These facts underscore the numerous complexities and difficulties the Government must overcome to prove a proper restitution amount in accordance with its burden.

---

[1] This does not include the City of Independence, Ohio (the "City") and the U.S. Tennis Association ("USTA"), as the Government has not offered any amount of loss for the City and the USTA has not provided any documentary support for its claimed loss of $132,000.00.

[2] Even then, $7,754.25 of this amount came *before* Ms. Witte knowingly participated in the Trickbot Conspiracy.

**AUSAs Brown and Riedl**
**November 14, 2024**
**Page 6 of 6**

Thus, for these reasons, and the reasons explained in greater detail in her Brief in Opposition to the Award of Restitution, Ms. Witte objects to the Joint Statement's recommendation of $21,229,148.01. Rather, given the complexities of a restitution determination in this matter, including the Government's failure to satisfy its burden of evidence, Ms. Witte submits that the proper restitution amount is zero dollars.

If you have any questions or would like to discuss any of the items listed above, please contact us as soon as possible.

Sincerely,

Chris N. Georgalis
o 216.367.2095
c 216.374.1890
chris@flannerygeorgalis.com